FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 JUL 25 AM 11: 11

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CURTIS R. MARTIN, JR.,                    *

    Petitioner,                           *

                             Civil Action No. RDB-18-0103

    v.                                    *      Crim. Action No. RDB-15-0111

UNITED STATES OF AMERICA,                 *

    Respondent.                           *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

On July 28, 2015, *pro se* Petitioner, Curtis R. Martin, Jr. ("Petitioner" or "Martin"),

pleaded guilty before this Court to one count of Wire Fraud in violation of 18 U.S.C. § 1343.

(ECF No. 43 at 2.)[1] This Court sentenced Martin to ninety-six (96) months' imprisonment

and ordered that he remain on supervised release for a period of three years.[2] (ECF No. 75.)

Martin subsequently appealed his sentence to the United States Court of Appeals for the

Fourth Circuit because it was above the advisory Guidelines range of 63 to 78 months. (ECF

No. 78.) On February 21, 2017, the Fourth Circuit affirmed this Court's Judgment. *See United*

*States v. Martin*, 676 F. App'x 214 (4th Cir. 2017). On January 10, 2018, Martin filed the

subject Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.

(ECF No. 90.) The parties' submissions have been reviewed, and no hearing is necessary. *See,*

---

[1] Petitioner was charged via a fourteen-count Indictment with Wire Fraud in violation of 18 U.S.C. § 1343, Aiding and Abetting in the commission of same, in violation of 18 U.S.C. § 2(b) (Counts 1-9) and False Statements, in violation of 18 U.S.C. § 1001(a)(2) (Counts 10-14) (ECF No. 1.) Petitioner pleaded guilty to Count 5 and the Government dismissed Counts 1-4, and 6-14 pursuant to the Plea Agreement. (ECF No. 43.)

[2] The supervised release period was ordered to run concurrent with the term imposed in a separate criminal case (No. RDB-11-0312), and was also subject to additional supervised release conditions. (ECF No. 75 at 4.)

*e.g.*, *United States v. Lemaster*, 403 F.3d 216, 220–23 (4th Cir. 2005) (holding that a hearing must be held "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ."); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004); *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998); *see also* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Petitioner's Motion to Vacate (ECF No. 90) is DENIED.

## BACKGROUND

The facts of this case are largely laid out in Martin's Plea Agreement. (Statement of Facts, ECF No. 32 at 12-16.)[3] To summarize, Martin incorporated Oledix Technologies, LLC ("Oledix") during the summer of 2010 while serving the final portion of a one-hundred and sixty-two (162) month federal prison sentence at a halfway house in the District of Maryland. (*Id.* at 12.) Martin represented Oledix as a technology firm that designed and distributed a variety of touchscreen products. (*Id.*)

One of the companies from which Martin sought financing was New Century Financial ("NCF"), a Texas company in the business of accounts receivable financing. (*Id.* at 13.) In early April 2012, Martin provided NCF with fraudulent documents[4] that presented a misleading picture of Oledix's financial position. (*Id.*) As a result, Martin ultimately received financing on three different invoices from Oledix, with the amount of the invoices being substantially greater than the financing he received. (*Id.*) Specifically, on June 13, 2012, Martin submitted a request for financing to NCF. (*Id.*) This request was based upon a counterfeit invoice purportedly issued by Oledix to Johns Hopkins Medical Center

---

[3] In fact, Martin signed the Statement of Facts which read in part: "Defendant Curtis R. Martin, Jr. stipulates and agrees that the following facts are true, correct, and accurate." (Statement of Facts, ECF No. 32 at 16.)

[4] The fraudulent documents included Oledix's bank statements, financial reports, and customer sales. (*Id.* at 14.)

("Hopkins") in the amount of $174,720, for the sale of three "Oledix mobile telemedicine carts." (*Id.* at 15.) The next day, based upon receipt of this Hopkins invoice, NCF provided $119,986 in funding for Oledix via a wire transfer from its bank account in Texas to Oledix's PNC bank account in Maryland. (*Id.*; *see also* Count 5 of Indictment, ECF No. 1 at 8.)

On March 18, 2015, a federal Grand Jury charged Martin with various wire fraud offenses related to his involvement as President and Chief Executive Officer (CEO) of Oledix in these fraudulent schemes. (ECF No. 1.) Martin subsequently executed a Plea Agreement and pleaded guilty to Count 5 of the Indictment. (ECF Nos. 32, 43.) The Government then proceeded to dismiss Counts 1-4, and 6-14. (*Id.*) This Court sentenced Martin to ninety-six (96) months' imprisonment and ordered that he remain on supervised release for a period of three years subject to additional conditions. (ECF No. 75.)[5] Martin appealed this Court's Judgment to the Fourth Circuit based upon his sentence being above his advisory Guidelines range. *Martin*, 676 F. App'x 214. The Fourth Circuit affirmed this Court's Judgment stating that "Martin's sentence [was] procedurally and substantively reasonable." *Id.* at 215. Currently pending is Martin's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. (ECF No. 90.)

<u>STANDARD OF REVIEW</u>

Since Martin proceeds *pro se* in this manner, this Court must construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Alley v. Yadkin County Sheriff*

---

[5] This Court's Judgment imposed the following conditions in regards to Martin's supervised release period: (1) the defendant shall perform 100 hours of community service for each year on supervision for a total of 300 hours as directed by the probation officer; (2) the defendant shall provide the probation officer with access to any requested financial information; (3) the defendant shall satisfactorily participate in a vocational or educational program as directed by the probation officer; (4) the defendant shall pay restitution in the amount of $1,579,795 in equal installments of $200 a month during the term of supervision. (Supervised Release Additional Conditions, ECF No. 75 at 4.)

*Dept.*, 698 Fed. App'x 141 (4th Cir. Oct. 5, 2017) (citing *Erickson* for the proposition that "[p]ro se complaints and pleadings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers").

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to a collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255)). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion unless the petitioner can demonstrate cause and prejudice, or actual innocence. *United States v. Pettiford*, 612 F. 3d 270, 280 (4th Cir. 2010); *see Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339 (1994); *see also United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). However, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

4

## DISCUSSION

In Martin's § 2255 Motion, he claims his sentence should be vacated based upon *four* grounds. First, Martin claims the Government failed to provide evidence establishing that the wire transmission in Count 5 of the Indictment moved in interstate commerce, "resulting in a fatally defective indictment, centralizing undue fraud upon the court." (ECF No. 32 at 2.) As a result, Petitioner argues that as a matter of law, no violation of 18 U.S.C. § 1343 occurred and therefore he is not guilty of wire fraud. (*Id.*) Second, Martin requests to withdraw his guilty plea for "fair and just" reason under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. (*Id.* at 3.) Third, Martin alleges that he "experienced harm resulting from exposure to racial prejudice through a version of 'sentence entrapment'" (*Id.*) Fourth, Martin alleges that the "District Court committed 'plain error' when erroneously ordering restitution from BOP Inmate Financial Responsibility Program (IFRP) and impermissibly 'handing over' discretionary power to [the] probation department." (*Id.*)

In light of Martin proceeding *pro se* in this matter, this Court has construed his legal arguments to assert *five* claims for relief. To summarize, Martin's Motion is based on the alleged: (1) invalidity of his guilty plea; (2) insufficiency of the facts supporting his conviction; (3) sentencing errors related to restitution and post-incarceration employment; (4) prosecutorial misconduct; and (5) ineffective assistance of trial counsel. (ECF Nos. 90, 97.)

## I.   Procedural Default

The general rule governing procedural default of claims brought under § 2255 bars consideration of any matters that "could have been but were not pursued on direct appeal,

[unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains," or shows "actual innocence." *Pettiford*, 612 F. 3d 270, 280 (4th Cir. 2010) (citing *Mikalajunas*, 186 at 492-93).

Under the "cause and prejudice" standard, the petitioner must show: (1) *cause* for not raising the claim of error on direct appeal; and (2) *actual prejudice* from the alleged error. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (emphasis added); *see also Dretke*, 541 U.S. at 393; *Massaro*, 538 U.S. at 505 (2003); *Reed*, 512 U.S. at 354 ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mikalajunas*, 186 F.3d at 492-93. In addition, any ineffective assistance of counsel claim may also be raised for the first time in a § 2255 petition. *See Massaro*, 538 U.S. at 508.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effect assistance of counsel"). Additionally, the alleged error cannot simply create a possibility of prejudice, but must be proven to work to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456

6

U.S. at 170 (emphasis in original). Pursuant to the Supreme Court's ruling in *Carrier*, prejudice does not support relief of a procedural default in the absence of a showing of cause. *Id.* at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

In order to show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F. 3d 579, 583 (4th Cir. 2014). The petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F. 3d at 583 (emphasis added).

In this case, Martin procedurally defaulted on all grounds raised in his § 2255 petition, with the exception of his ineffective assistance of trial counsel claim. *See Massaro*, 538 U.S. at 509. In Martin's direct appeal to the Fourth Circuit, he challenged this Court's decision to sentence him "above his advisory Guidelines range of 63 to 78 months," but chose not to raise any other issues pertaining to his conviction. *See Martin*, 676 F. App'x 214. To be clear, Martin's sentencing challenge under § 2255 presents *new* claims regarding restitution and post-incarceration employment that were not raised on direct appeal. *Id.* Therefore, Martin's first four claims are procedurally barred unless he can demonstrate either (a) "cause and actual prejudice" sufficient to excuse his procedural default, or (b) that an "imminent

miscarriage of justice" would result from a denial of the collateral attack, i.e. he is factually innocent of the charge against him. *See Mikalajunas*, 186 F.3d at 492-93 (4th Cir. 1999)). However, Martin fails to satisfy either exception for his procedural default.

Here, Martin is unable to provide any "cause" for his procedural default. Martin failed to provide evidence of any "objective factor external to the defense" that impeded his appellate counsel's opportunity to raise this issue, nor did he assert any claim as to the ineffective assistance of his trial counsel. [6] *See Carrier*, 477 U.S. at 488. Additionally, this is not a case where Martin can claim that the legal basis for his claim was not reasonably available to him at any time during these proceedings. *See Bousley*, 523 U.S. at 622. All the elements of the wire fraud statute are explained in detail under 18 U.S.C. § 1343. Therefore, Martin cannot allege that the legal basis for his claim was not reasonably available to him during these proceedings. Without being able to show cause under the "cause and prejudice" standard, Martin has not satisfied the first exception for procedural default on his claims. *See Carrier*, 477 U.S. at 494; *Engle*, 456 U.S. at 134 n.43.

In determining whether any "fundamental miscarriage of justice" would result if his claims were denied, this Court finds that Martin has failed to produce any "clear and convincing evidence" of his "factual innonence of the offense of the conviction." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer*, 505 U.S. at 339 (1992)); *see also Bousley*, 523 U.S. at 623. Additionally, this Court notes that any "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11

---

[6] The only statement Martin gave regarding his appellate counsel was in regard to his factual/legal insufficiency claim, which appellate counsel felt that "there was not enough information on the record for such a ground which would be far more relevant in a habeas petition." (ECF No. 90 at 11.) Regardless, any claim of ineffective assistance of appellate counsel would be dismissed as Martin's claims are all meritless. *See supra* pp. 19-22.

colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted). "[A] district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 222. In this case, both documentary evidence, and the undisputed facts on record directly contradict any attempt on behalf of Martin to claim "actual innoncence" of wire fraud in connection with his receipt of the $119,985 that was sent to him in Maryland from NCF in Texas. (ECF Nos. 32, 43, 96-5.) Accordingly, Martin's allegations fail to represent a "prototypical example" of the application of the "actual innocence" exception; where a petitioner is innocent of all criminal wrongdoing, such as where he claims that the government has convicted the wrong person for the crime. *See Sawyer*, 505 U.S. at 340 (1992). Therefore, since Martin has not shown any "fundamental miscarriage of justice" would occur if his claims were denied, this Court finds that Martin has procedurally defaulted on all his claims besides his claim to ineffective assistance of counsel and is barred from bringing forth these claims in his § 2255 petition. Even if these four claims are not procedurally barred, they are meritless nonetheless.

## II. Petitioner's Claims Are Without Merit

### A. Guilty Plea

More than thirty years ago, the Supreme Court stressed that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984); *see also Bousley*, 523 U.S. at 621 ("We have strictly limited the circumstances under which a guilty plea

may be attacked on collateral review"); *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (emphasizing that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."). Here, Martin's guilty plea was clearly established on record when he signed the Plea Agreement and affirmed his guilty plea in this Court's Rule 11 colloquy. (ECF Nos. 32, 43.) Therefore, Martin's only avenue to setting aside his guilty plea is to prove that his plea was not knowing or voluntary.[7]

### 1. Knowledge

In this case, Martin's knowledge of the facts and elements underlying his Plea Agreement is amply supported by the record. Martin was advised several times by this Court with respect to the stipulated facts within his Plea Agreement. At one point, Martin was specifically instructed that "the factual basis for this plea is also contained in Attachment A to the plea agreement." (ECF No. 43 at 30.) In fact, Martin's signature appears at the bottom of the Statement of Facts in Attachment A of his Plea Agreement, which reads in part: "Defendant Curtis R. Martin, Jr. stipulates and agrees that the following facts are true, correct, and accurate." (ECF No. 32 at 16.) In addition, the elements of the charges were thoroughly laid out by the Government in its Indictment and Plea Agreement. (Elements of the Offense, ECF No. 32 ¶ 2 at 1-2.)

The transcript of the guilty plea hearing also reflects a meticulous colloquy by this Court to confirm that Martin understood all the charges against him, and was fully informed

---

[7] Martin has also requested to withdraw his guilty plea for "fair and just" reason under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 11. However, it is unclear how this claim falls under the scope of § 2255 petition. In any event, even on its own merits, this claim is untimely. Rule 11(d) provides that a defendant may withdraw a guilty plea if he can show a fair and just reason for the request either: (1) before the court accepts the plea; or (2) after the court accepts the plea, but before it imposes sentence. Fed. R. Crim. P. 11(d)(1)-(2). Thus, Martin's failure to bring this claim before his sentence bars his attempt to withdraw his guilty plea under Fed. R. Crim. P. 11(d)(2)(B).

of the rights he was waiving in addition to his potential exposure at sentencing. (ECF No. 43.) During this hearing, Martin acknowledged that he received a copy of the Indictment with the written charges against him and also had the opportunity to fully discuss these charges with his attorney, including any evidence in the case. (*Id.* at 9.) This Court carefully advised Martin that he would be pleading guilty to "wire fraud as charged in Count 5" and that the elements the Government would have to prove were "set forth in paragraph 2 of the plea agreement." (*Id.* at 29.)[8] This Court proceeded to summarize the required elements of Count 5 – including that "in the execution of the scheme, that you caused the use of interstate wires as specified in the indictment and in the attached statements of facts" – which Martin confirmed that he understood. (*Id.* at 29-30.) Further, before Martin entered his guilty plea, this Court called upon the Government "to summarize and make a representation concerning the facts the government would be prepared to prove at trial."[9] (*Id.* at 34.) Afterwards, Martin confirmed these facts were an accurate representation of what happened. (*Id.*) Therefore, any argument pertaining to Martin not knowing the facts and elements of his Plea Agreement before he pleaded guilty is meritless.

---

[8] The court explained the elements of Wire Fraud in detail to Martin:

> First, that there was a scheme and artifice to defraud or to obtain money by means of materially false and fraudulent pretenses, representations, and promises as charged in the indictment. Second, that you knowingly and willfully participated in that scheme or artifice with knowledge of the fraudulent nature, and with the specific intent to defraud, or that you knowingly and intentionally aided and abetted others to do so. And, thirdly, that in the execution of the scheme, that you caused the use of interstate wires as specified in the indictment and in the attached statement of facts.

(ECF No. 43 at 29-30.)

[9] It is important to note that when evaluating the sufficiency of the factual showing to support a guilty plea, a district court "possesses wide discretion" and "need only be subjectively satisfied that there is a sufficient factual basis for the conclusion that the defendant committed all of the elements of the offense." *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997) (in order to find that there is a sufficient factual basis to support a defendant's guilty plea, "a district court need not replicate the trial that the parties sought to avoid"); *see also United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1998) (noting that a "stipulated recitation of facts alone [is] sufficient to support a plea . . ..").

Martin also claims "sentencing entrapment" as he allegedly had no idea that a number of issues, which could result in an enhanced sentence, had been expressly reserved by his Plea Agreement for resolution at sentencing. (ECF No. 90 at 18.) However, Martin's claim of sentencing entrapment is refuted by the evidence on the record. The record of Martin's guilty plea hearing clearly shows that he was fully advised that a number of issues had been reserved for determination at his sentencing. Specifically, this Court informed Martin that "there are numerous guideline issues that [will] be address[ed] at the time of sentencing" and that "[p]ursuant to paragraph 7 of the plea agreement . . . there is no agreement as to your criminal history . . . ." (ECF No. 43 at 14, 21.) Further, this Court expressly advised Martin that "the Government will take the position that you should have the highest Criminal History Category," although defense counsel "will be free to argue against that at the time of sentencing . . . ." (*Id.* at 21.) Additionally, the Government's intention to pursue all of the enhancements it ultimately sought against Martin at his sentencing hearing was also expressly stated in the text of his Plea Agreement. (ECF No. 32 at 4-6) (sentencing enhancements highlighted in bold font).[10] In sum, the record reflects that Martin was advised multiple times on issues that would have to be addressed at sentencing and conclusively shows that Martin was always fully aware of all sentencing enhancements, contradicting any claim Martin has to "sentencing entrapment."

Related to his claim of sentencing entrapment, Martin alleges that he suffered "harm resulting from exposure to racial prejudice through sentencing entrapment." (ECF No. 90 at 18.) Specifically, Martin claims he was a victim of racial prejudice on behalf of the

---

[10] In fact, Martin makes this clear throughout his §2255 motion that he was aware of the Government's intentions. (ECF No. 90 at 6, 7, 12.)

Government and this Court because his past criminal acts are "hardly the history of a career offender, or a serial con artist, unless of course bigotry and racial discrimination are integral parts of the imputation of blame." (ECF No. 97 at 7; *see also* ECF No 90. at 6, 18, 22, 25-26) (internal quotations omitted). However, Martin's claims are baseless, especially since Martin later admits in his Rejoinder that his "history reveals [he] has 6 convictions in 38 years with only one of them being considered a serious felony, by legal definition." (*Id.* at 13.) Martin's allegations appear to be directly related to his dissatisfaction with the Government's pursuit of a severe sentence based on his extensive criminal history and the § 3553(a) factors that this Court used in formulating the sentence he received.[11] In fact, when Martin challenged this Court's decision to sentence him "above his advisory Guidelines range of 63 to 78 months" on direct appeal, the Fourth Circuit held that:

> the district court made an individualized assessment based on the facts presented, applied relevant § 3553(a) factors to the specific circumstances of the case and the defendant, and adequately explained the particular reasons supporting its sentence. We therefore give due deference to the district court's reasoned and reasonable decision that the § 3553(a) factors justified the sentence. *See United States v. Diosdado–Star*, 630 F.3d 359, 367 (4th Cir. 2011) (citation and quotation marks omitted).

*Martin*, 676 F. App'x at 215-16. Therefore, Martin's claim that he suffered racial prejudice is simply a "vague and conclusory allegation . . . which may be disposed of without further investigation by [this] District Court." *United States v. Dyess*, 730 F.3d 354 (4th Cir. 2013) (citation omitted).

---

[11] Martin's racial prejudice claim also suggests that he believes his sentence was far in excess of what a Caucasian would have received for similar conduct. However, there is no basis in the record of this case to support this allegation. In addition, Government counsel has noted longer sentences of incarceration for Caucasian defendants. (*See* ECF No. 96 at 19-20 n. 9.)

13

### 2. Voluntariness

Martin alleges in his § 2255 petition that his defense counsel "coerc[ed] [him] to execute a plea agreement" and claims his "guilty plea was coerced under restraint by his counsel." (ECF No. 90 at 6, 9.) This claim challenges the voluntariness of Martin's guilty plea, but is refuted by evidence on the record.

A plea of guilty is void when induced by promises or threats which deprive it of its voluntariness, and any judgment and sentence entered thereon is subject to collateral attack by a § 2255 motion. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970); *see also Machibroda v. United States*, 368 U.S. 487, 494 (1962). However, "[w]here the files and records conclusively show that the prisoner is entitled to no relief, summary dismissal is appropriate." *Raines*, 423 F.2d at 529. In *Raines*, the Fourth Circuit inquired into the district court's Rule 11 hearing under the Federal Rules of Criminal Procedure, regarding the voluntariness of petitioner's waiver and guilty plea. *Id.* at 530. The Fourth Circuit made clear that the Rule's intention is "to produce a complete record of the factors relevant to the voluntariness of the guilty plea and, thereby, to forestall subsequent controversy as to voluntariness." *Id.* at 530; *see also Gundlach v. United States*, 262 F.2d 72 (4th Cir. 1958).

In Martin's case, this Court conducted an extensive guilty plea hearing in compliance with Rule 11 of the Federal Rules of Criminal Procedure. This Court specifically inquired into the voluntariness of Martin's guilty plea under Rule 11(b)(2), and Martin acknowledged that he was "pleading guilty on [his] own, freely, and because [he was] in fact guilty" of the charge of wire fraud set forth in Count 5. (ECF No. 43 at 15.) In addition, this Court also asked Martin whether "anyone made any other or different promises or assurances to [him]

in an effort to induce [him] to plead guilty in this case, other than what is set forth in the plea agreement letter and Attachment A?" (*Id.* at 12.) In response, Martin stated that there were "no other." (*Id.*) Martin's defense counsel also confirmed that the Plea Agreement "set forth the complete agreement" with the Government. (*Id.*) After careful review of the plea hearing transcript, it is evident that this Court made an assiduous and thorough inquiry to satisfy itself that Martin had been informed about all relevant matters and that his plea was voluntary. Accordingly, any of Martin's allegations to the involuntariness of his guilty plea are without merit.

## B. Legal Sufficiency of Stipulated Facts

Martin argues that the facts in his Plea Agreement are legally insufficient based upon the "Government['s] fail[ure] to meet [its] burden to establish [an] interstate nexus in [a] wire fraud case . . . ." (ECF No. 1 at 2.) However, in *United States v. Willis*, the Fourth Circuit held that "[a] knowing, voluntary, and intelligent guilty plea to an offense conclusively establishes the elements of the offense and the material facts necessary to support the conviction." *Willis*, 992 F.2d 489, 490 (4th Cir. 1993); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."); *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (a voluntary and intelligent plea of guilty "is an admission of all the elements of a formal criminal charge"); *LaMagna v. United States*, 646 F.2d 775, 778 (2d Cir. 1981) (with regard to the elements of the offense admitted by a defendant, a guilty plea "was itself a conviction as conclusive as a jury verdict"). In addition, the Fourth Circuit has also stated that a guilty plea also constitutes a waiver of all nonjurisdictional defects, *see*

*Parker v. Ross*, 470 F.2d 1092, 1093 (4th Cir. 1972), including "the right to contest the factual merits of the charges." *Willis*, 992 F.2d at 490 (citations omitted).

As previously stated, Martin knowingly and voluntarily pleaded guilty on July 28, 2015 before this Court. (ECF No. 43.) Not only did Martin admit in the Plea Agreement that the transmission of the $119,985 in NCF funds from Texas to him in Maryland *involved an interstate wire transmission*,[12] but the Government also provided documentary evidence of a wire transfer receipt showing the movement of funds from NCF's bank in Texas to Martin's PNC bank account located in Maryland where he withdrew the funds. (ECF Nos. 32, 96-5. Therefore, any challenge by Martin to the sufficiency of evidence surrounding his conviction twenty-nine (29) months later is unwarranted, improper and without merit.

## C. Sentencing Order

Martin also claims that the District Court committed "plain error" when it allegedly: (1) ordered him to pay restitution during his term of incarceration from the Inmate Financial Responsibility Program (IFRP); and (2) directed the Probation Officer to oversee an appropriate choice of livelihood for him that would not endanger the public when he was released. (ECF No. 90 at 26-27.) However, Martin's claim misconstrues the sentencing orders given by this Court. At Martin's sentencing hearing, Government counsel asked that this Court to check the box on the Judgment and Commitment (J&C) Order providing that Petitioner's restitution obligation be due and payable "[i]n full immediately" "so that

[12] Martin admitted the following in the Plea Agreement's Statement of Facts:

> NCF was deceived by Martin's fraudulent representations and confidence tricks, and on June 14, 2012, it provided an additional $119,985 in funding for Oledix based on the Johns Hopkins invoice. *These funds were again transmitted by wire from NCF's bank in Texas to Oledix's bank account with PNC Bank in Maryland, as alleged in Count Five of the Indictment.*

(ECF No. 32 at 15) (emphasis added).

16

amounts *can* be taken out for the Inmate Financial Responsibility Program while he's in prison." (ECF No. 85 at 188) (emphasis added). This Court agreed, however, as Government counsel's own statement made clear, this merely *allowed* payments to be taken out of Martin's personal account while incarcerated to be paid to the IFRP; it did not *require* that he participate in the program, which, as Martin correctly notes, is voluntary. Similarly, while this Court stated that "your employment [on supervised release] is not going to involve any kind of business venture whatsoever, definitely not self-employment of any kind" (ECF No. 85 at 182), the Standard Conditions in the J&C merely require that he "work regularly at a lawful occupation" (ECF No. 75 at 3) and that he "notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics . . . ." (*Id.*) Therefore, if there is a time when the issue of Martin's future employment while on supervised release needs to be addressed, that will be when he is released from prison,[13] and not at this time, when any such concerns are wholly speculative.

### D. Prosecutorial Misconduct

Martin contends that Government counsel committed "proscutorial misconduct" by suppressing exculpatory evidence in order to effectuate a plea bargain with Martin's defense attorney. (ECF No. 90 at 11.) The Supreme Court has addressed pre-guilty-plea disclosure in the context of witness *impeachment* evidence, holding "that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). In

---

[13] Martin is currently expected to be released on March 15, 2022. (ECF No. 96 at 23.)

addition, even though the Supreme Court has yet to address whether the *Brady*[14] right to *exculpatory* information might be extended to the guilty plea context, the Fourth Circuit has "held that *Ruiz* foreclosed any claim by the defendant that the prosecutor's failure to disclose information potentially relevant as mitigation evidence in the death-penalty phase of defendant's trial served to invalidate his guilty plea." *United States v. Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010) (citing *Jones v. Cooper*, 311 F.3d 306, 315 n. 5 (4th Cir. 2002)). Although the Fourth Circuit has yet to decide whether "prosecution's failure to disclose material exculpatory evidence at the plea stage could result in an unknowing plea in certain narrow circumstances," the court ruled that at the very least the defendant must "demonstrate that his guilty plea was entered unknowingly for this reason." *Moussaoui*, 591 F.3d at 286.

Even if *Brady* were to apply at the guilty plea stage, Martin's *Brady* claim is meritless. Like in *Moussaoi*, Martin has failed "to demonstrate that *his* waiver of the purported right to exculpatory evidence prior to pleading guilty was not made knowingly and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." In other words, to establish a *Brady* violation, the evidence must be more than simply favorable to the defendant—it must also be suppressed and material to the defense. In order to meet the suppression prong, the Petitioner must point to a specific piece of exculpatory evidence which was "known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103 (1976). Here, Martin fails to name a specific piece of exculpatory evidence that the prosecution allegedly suppressed in this case, nor has he demonstrated how any piece of evidence would have been material to his decision to plead guilty. *See*

---

[14] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court found "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

*Moussaoui*, 591 F.3d at 286; *Agurs*, 427 U.S. at 103. Furthermore, in the context of Martin's claim of "prosecutorial misconduct," the Fourth Circuit has held that "[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to establish prosecutorial misconduct." *United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (internal quotations omitted); *see also Dyess*, 730 F.3d at 359. For these reasons, Martin's allegation of a Brady violation and/or prosecutorial misconduct has no merit.

### III.   Ineffective Assistance of Trial Counsel

Turning to Petitioner Martin's only claim that was not procedurally defaulted, Martin asserts in his § 2255 Motion that his trial counsel, was "professional[ly] ineffective with prejudice" based upon an alleged failure to (1) utilize potentially exculpatory evidence; (2) re-negotiate the terms of the Plea Agreement; and (3) failure to inform Martin about any sentencing enhancements. (ECF No. 90 at 5-6, 7-8, 13, 20, 26.)[15] Martin's "freestanding claim of ineffective assistance of [trial] counsel may properly be asserted for the first time in a § 2255 petition." *United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991). To state a claim for relief based on ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"); *Wiggins v. Smith*, 539 U.S. 510, 521

---

[15] Martin also claims that his trial counsel supposedly colluded with the prosecution to coerce him into accepting the Plea Agreement. (ECF No. 90 at 6.) However, Martin provides no evidence to support this claim. That his counsel encouraged him to conclude a plea agreement in order to receive less time in prison than he would have otherwise does not begin to make a showing of collusion or coercion. In fact, his counsel's advice to that effect was beyond reproach. By entering his guilty plea, Martin secured the Government's agreement to move for a reduction of three offense levels in his Sentencing Guidelines based upon his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. (ECF No. 32 at ¶ 6.) Absent that, Martin's final adjusted offense level under the Guidelines would likely have been at least 21-27 months longer, and the Government asserts that it would have sought a sentence at the upper end of that range. (ECF No. 96 at 9.) Accordingly, Martin's trial counsel did not perform "unreasonably" when advising him to plead guilty.

(2003). Under the *Strickland* test, Martin must establish that (1) the performance of his trial counsel fell below an objective standard of reasonableness; and (2) these errors of trial counsel prejudiced his defense. *Strickland*, 466 U.S. at 687-688. In applying the *Strickland* test, the Fourth Circuit has concluded that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F. 3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697.

When evaluating the "performance" prong of the test, this Court applies a "'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Roane*, 378 F.3d 382, (2004) (quoting *Strickland*, 466 U.S. at 689). This performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." *Roane*, 378 F.3d at 403 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)); *see also Strickland*, 466 U.S. at 689. In deciding whether a petitioner has met this burden, the court must make a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight." *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). "[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. It is important to note that any ineffective assistance claim based on counsel's failure to raise a particular defense requires as a threshold matter a showing that the defense is meritorious. *Kimmelman*, 477 U.S. at 382. To the extent that Petitioner wishes his counsel had

20

argued the motion differently, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *United States v. Basham*, 789 F. 3d 358, 371 (4th Cir. 2015).

Here, Martin has not shown any evidence that his trial counsel's performance was "below an objective standard of reasonableness." First, Martin claims that "an avenue that conceivably might have led to [his] exoneration, was not explored by [trial counsel]" based upon the fact that "[n]o attempt was made to disclose in specificity that no wire fraud was ever committed by [him]." (ECF No. 90 at 7.) However, this ignores the fact that his defense counsel researched, drafted, and presented to this Court a previous motion challenging the sufficiency of six[16] of the nine wire fraud counts based on interstate commerce grounds. (Def.'s Mot. Dismiss, ECF No. 24.) This demonstrates that defense counsel carefully researched this issue, evaluated the Government's evidence, and made a decision that challenging the interstate nexus as to the wirings of NCF funds to Oledix charged in Counts 3, 5, and 9 would be frivolous.[17] Thus, since this defense is not meritorious, trial counsel's failure to raise this particular defense for the other three charges is not considered unreasonable. *See Kimmelman*, 477 U.S. at 382.

---

[16] These six counts involved transmissions of purported Oledix corporate financial information from Martin to NCF. (ECF No. 1 at 7-8.)

[17] Additionally, even the defense's motion as to the other six counts raises dubious arguments itself. Each of the challenged counts charged Martin with the "[t]ransmission of an email from Maryland to the offices of NCF in The Woodlands, Texas . . . ." (*Id.*) Due to the fact that Martin lived and worked in Maryland, there was every reason to believe that these email transmissions by him originated in Maryland, regardless of where the servers through which they passed en route may have been located. Further, circumstantial evidence of a communication's beginning and end, not just evidence tracing the specific path of the communication, is sufficient to prove the "interstate nexus" element. *See United States v. Vincent*, 758 F.2d 379, 381 (9th Cir. 1985) (finding that a phone call recipient's statement that he was in a different state than the caller was sufficient for "a rational trier of fact [to find] beyond a reasonable doubt that the . . . telephone call was an interstate call."); *Weisser v. Ciccone*, 532 F.2d 101, 104 n.6 (8th Cir. 1976).

Second, Martin claims that his trial counsel was ineffective for not negotiating a better plea bargain. (ECF No. 90.) However, such an argument is similarly unavailing because it implicates "strategic choices" made by Martin and his counsel which are "virtually unchallengeable." *See Strickland,* 466 U.S. at 690. Lastly, Martin claims his trial counsel was ineffective for failing to inform him of the possibility of sentence enhancements at the sentencing hearing. (ECF No. 90.) However, at his guilty plea hearing, Martin confirmed that he had read and discussed the Plea agreement with his trial counsel before he signed it and by his signature he certified:

> I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the performance of my attorney.

(ECF No. 43 at 11.) Further, as discussed above, Martin was informed multiple times by this Court and the Government about the possibility of sentencing enhancements. Accordingly, any claim of inadequate representation as to either the Plea Agreement or sentencing hearing is without merit.

In summary, Martin's ineffective assistance arguments appear to be thinly veiled attempts to challenge his guilty plea. Moreover, having failed to present even a colorable argument trial counsel acted "unreasonably," Martin fails to establish the "performance" prong of the *Strickland* standrad, and this Court does not need to address the "prejudice" prong.

## IV.    Motion for Discovery

Petitioner Martin has also requested that this Court "order the [G]overnment to produce the [B]ill of [P]articulars that were used as discovery to convince a [G]rand [J]ury

that Martin committed wire fraud pursuant to 18 U.S.C. § 1343." (ECF No. 90 at 6.) This Court will construe Martin's request liberally as a Motion for Discovery under Rule 6 of the Rules Governing § 2255 Proceedings.

A § 2255 petitioner is not permitted discovery as a matter of course as in ordinary civil litigation. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). According to Rule 6(a) of the Rules Governing § 2255 Proceedings, a prisoner may engage in discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants him leave to do so, but not otherwise." *Roane*, 378 F.3d 382 (4th Cir. 2004); *see also Thomas v. Taylor*, 170 F.3d 466 (4th Cir. 1999). The Supreme Court previously determined that "good cause" for discovery exists when a petitioner establishes a prima facie case for relief. *Harris v. Nelson*, 394 U.S. 286, 290 (1969); *see also Bracy v. Gramley*, 520 U.S. 899 (1997); *Roane*, 378 F.3d 382; *Johnson v. Pruett*, No. 3:97CV895 (E.D.Va. May 3, 2000). Good cause for discovery exists in a § 2255 motion, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (citing *Harris*, 394 U.S. at 299-300); *Roane*, 378 F.3d 382 (4th Cir. 2004); *see also Brown–Bey v. United States*, 720 F.2d 467, 471 (7th Cir.1983) (applying the similarly worded Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts). When the discovery requested does not raise a constitutional issue, there is no good cause for the discovery. *United States v. Davuluri*, No. 02 C 50053, 2002 WL 1033097, at *1 (N.D.Ill. May 21, 2002) (denying a motion for discovery when the discovery requested raised an impeachment issue, not a constitutional issue). Additionally, if the requested discovery would have had no bearing on any of petitioner's substantive claims,

the district court has proper discretion to deny a discovery request. *Taylor*, 170 F.3d at 475. The decision to grant discovery to a movant under § 2255 is left to the sound discretion of the district court, but a blanket denial is an abuse of discretion if the discovery is "indispensable to a fair, rounded, development of the material facts." *Bontkowski*, 262 F. Supp. 2d 915. *United States ex rel. Shores v. Warden, Pontiac Corr. Ctr.*, No. 95 C 3932, 1996 WL 341390, at *7 (N.D.Ill. June 18, 1996) (internal quotations omitted) (citations omitted).

Martin's request for Grand Jury material also implicates Rule 6(e) of the Federal Rules of Criminal Procedure, which provides that "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958); *Dennis v. United States*, 384 U.S. 855, 869-70 (1966). In other words, a petitioner must demonstrate the existence of a "particularized need" for such discovery that outweighs the general rule of grand jury secrecy. *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958); *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211(1979); *Dennis v. United States*, 384 U.S. 855 (1966).

In the exercise of its discretion, this Court finds that Petitioner failed to demonstrate the requisite good cause necessary for discovery in a § 2255 proceeding, let alone the much higher standard required for disclosure of Grand Jury proceedings. In this case, no good cause for discovery exists. Since this Court has already determined that Martin procedurally defaulted on four of his five claims, and that all five claims are meritless, any requested

discovery would have no bearing on the outcome of this decision. This Court therefore denies Martin's Motion for Discovery.

## CONCLUSION

For the reasons stated above, Petitioner Martin's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 90) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Because reasonable jurists would not find Martin's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: July 24, 2018

_____
Richard D. Bennett
United States District Judge

25